IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TEXAS GAS TRANSMISSION, LLC,

 Plaintiff,

v.                   No. 1:21-cv-01150-JDB-jay

JORDAN EAST and EAST FARMS
PARTNERSHIP, LLC,

 Defendants.

_____

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
_____

*INTRODUCTION AND PROCEDURAL BACKGROUND*

In its amended complaint in this diversity action, the Plaintiff, Texas Gas Transmission, LLC ("Texas Gas"), has alleged against the Defendants, East Farms Partnership, LLC ("East Farms") and Jordan East, claims of negligence, negligence per se, and trespass. (Docket Entry ("D.E.") 11.) Pending on the Court's docket is Plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (D.E. 35), to which Defendants responded (D.E. 49), and Plaintiff replied (D.E. 53).

*JURISDICTION AND CHOICE OF LAW*

A federal court has an independent obligation to consider whether it has subject matter jurisdiction over a case pending before it and may do so *sua sponte*. *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1011 (6th Cir. 2018). As courts of limited jurisdiction, the federal courts have only "the authority to decide cases that the Constitution and Congress have empowered them to resolve." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008) (per curiam).

Title 28 U.S.C. § 1332 confers upon the federal courts original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States[.]"  28 U.S.C. § 1332(a)(1).  According to the operative pleading, Texas Gas is a Delaware limited liability company with no member that is a citizen of Tennessee.  East is a citizen of Tennessee residing in Friendship, Tennessee.  He is the managing member of East Farms, a Tennessee limited liability company.  No member of East Farms is a citizen of the same state as Texas Gas.  Plaintiff seeks damages in excess of $75,000.  In "diversity cases, the general rule is that the amount claimed by a plaintiff in [its] complaint determines the amount in controversy."  *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 469 (6th Cir. 2019) (quoting *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920-21 (6th Cir. 2000)).  Accordingly, the Court has original jurisdiction over this suit.

Diversity actions require a federal district court to apply the substantive law of the forum state.  *Hackney v. Lincoln Nat'l Fire Ins. Co.*, 657 F. App'x 563, 570 (6th Cir. 2016) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  The parties do not dispute that Tennessee law governs this matter.

## STANDARD OF REVIEW

Rule 56 provides in relevant part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "There is a genuine dispute of material fact if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Hrdlicka v. Gen. Motors, LLC*, 59 F.4th 791, 801-02 (6th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted).  "A dispute is 'genuine' only if a reasonable jury could decide it either way, and it is 'material' only if its

resolution could affect the case's outcome." *Reform Am. v. City of Detroit, Mich.*, 37 F.4th 1138, 1147 (6th Cir.) (internal quotation marks omitted), *cert. denied*, 143 S. Ct. 448 (2022).

In making its determination, the court is to "view the factual evidence in the light most favorable to the nonmoving part[ies], and draw all reasonable inferences in th[ose] part[ies'] favor." *Stein v. Gunkel*, 43 F.4th 633, 639 (6th Cir. 2022) (quoting *Burwell v. City of Lansing*, 7 F.4th 456, 462 (6th Cir. 2021)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, when ruling on a motion for summary judgment." *Helphenstine v. Lewis Cty., Ky.*, 60 F.4th 305, 314 (6th Cir. 2023) (quoting *Liberty Lobby*, 477 U.S. at 255) (internal quotation marks omitted).

### *UNDISPUTED MATERIAL FACTS*

The following material facts are undisputed for purposes of the instant motion unless otherwise noted.[1] Texas Gas operates subsurface natural gas pipelines on property located north

---

[1] In their response, Defendants include an "Additional Statement of Undisputed Facts." (D.E. 50 at PageID 324-25.) The local rules of this district provide that:

> the non-movant's response may contain a concise statement of any additional facts *that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried*. Each such disputed fact shall be set forth in a separate numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

LR 56.1(b) (emphasis added). As Plaintiff correctly points out in its reply, the rule does not recognize the submission of additional *un*disputed facts. *See Lansky v. Protection One Alarm Monitoring, Inc.*, No. 17-2883, 2019 WL 575390, at *1 (W.D. Tenn. Feb. 12, 2019) (because nonmovant did "not contend her additional statement [of undisputed facts] contain[ed] genuine factual issues to be tried" as permitted under the local rule, her filing was "not recognized" thereunder); *Whitney v. City of Milan*, No. 1:09-cv-01127-JDB-egb, 2014 WL 11398537, at *1 n.1 (W.D. Tenn. Feb. 25, 2014) (local rule did not provide for the filing by a nonmovant of her own "statement of additional *un*disputed facts" in response to motion for summary judgment). Therefore, Defendants' additional undisputed facts will not be considered by the Court. *See Whitney*, 2014 WL 11398537, at 1 n.1 (court declined to consider nonmovant's additional statement of undisputed facts); *Goodbar v. Technicolor Videocassette of Mich., Inc.*, No. 09-

of Poplar Corner Road, south of Lem Williams Road, east of Norris Crossing Road, and west of Lower Brownsville Road in Haywood County, Tennessee (the "Property").  Plaintiff holds a recorded right-of-way agreement to operate pipelines running through the Property.  East is an owner of East Farms, a row crop agricultural concern that leases the Property for agricultural purposes.  Part of East Farms' business involves the use and operation of mechanized equipment, including bulldozers and excavators, on the Property to address erosion issues.  Defendants have used a bulldozer to push dirt into piles and an excavator to move the soil to a "dirt pan" when rebuilding terraces on the Property.  Defendants have also used mechanical equipment to dig "a little trench" about "a foot or so" deep to bury plastic pipe in the ground in order to help redirect water flow.  (D.E. 50 at PageID 318.)

On April 6, 2020, East and two East Farms employees identified as Billy Brimm and Robert Sego, who East had hired and who reported directly to him, were working on the Property.  Brimm and Sego were operating an excavator and bulldozer, respectively, while East worked a sprayer a short distance away.  The employees were using the equipment to address erosion by moving dirt to rebuild a handful of terraces.  All three knew of the existence of the pipelines running underneath the Property.  The Defendants did not contact Tennessee's one-call service or the Plaintiff prior to performing the work.

According to an aerial patrol report dated April 6, 2020, one of Plaintiff's patrol pilots observed on that date a "Track-hoe and Dozer fixing field across [right-of-way]."  (D.E. 35-6.) In response, two Texas Gas employees, David Kinney and Malcolm Coulston, traveled to the Property the same day to inspect it for potential damage to the pipelines.  The two men surveyed the Property and inspected various locations, one of which was over a Texas Gas pipeline.  They

---

2553, 2010 WL 5464796, at *3 (W.D. Tenn. Dec. 30, 2010) (declining to consider nonmovant's additional statement of undisputed facts as the local rules made no provision for such a practice).

"used shovels to dig out enough dirt to expose the pipeline so that they could inspect the pipeline for any damage." (D.E. 37 at PageID 210.) However, they were unable to expose the pipeline due to the amount of water and "sludge" entering the hole as they shoveled. They returned the following day with a mini-excavator to form a levee on a creek running through the Property so they could finish exposing the pipeline by shovel. Once the pipeline was exposed, Plaintiff's employees discovered two gouges in the pipeline about twelve inches apart.

ARGUMENTS OF THE PARTIES AND ANALYSIS

<u>Negligence Claims.</u>

*Common Law Negligence*

To prove a prima facie case of negligence under Tennessee law, a plaintiff must show "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Cook v. Fuqua*, 653 S.W.3d 702, 706 (Tenn. Ct. App. 2022) (quoting *Biscan v. Brown*, 160 S.W.3d 462, 478 (Tenn. 2005)), *appeal denied* (June 8, 2022). As it is dispositive of the instant motion, the Court will focus on causation.

A plaintiff must establish causation under the fourth and fifth elements of the negligence claim by a preponderance of the evidence. *Swift v. Old Dominion Freight Lines, Inc.*, 583 F. Supp. 3d 1125, 1132 (W.D. Tenn. 2022). "Causation, or cause in fact, means that the injury or harm would not have occurred 'but for' the defendants' negligent conduct." *Id.* (quoting *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)). Upon a showing of causation in fact, "proximate cause asks whether the law should extend responsibility for negligent conduct to the consequences that have occurred." *Id.* (quoting *King v. Anderson Cty.*, 419 S.W.3d 232, 246 (Tenn. 2013)) (internal quotation marks omitted). To satisfy the proximate cause element,

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Hamrick v. James*, 599 F. Supp. 3d 720, 724 (E.D. Tenn. 2022) (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 774-75 (Tenn. 1991)) (some internal quotation marks omitted).  Ordinarily, causation is a jury question, "unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Swift*, 583 F. Supp. 3d at 1132 (quoting *Haynes v. Hamilton Cty.*, 883 S.W.2d 606, 612 (Tenn. 1994)).

Texas Gas submits that, based upon the undisputed facts before the Court—namely, that the nonmovants were the only persons working and operating mechanized equipment on the Property when the aerial patrol pilot made his observation and the damage was discovered—and the inferences to be drawn from those facts, the only reasonable conclusion is that Defendants damaged the pipeline.  By way of response, Defendants vehemently deny performing work atop the pipeline or striking it.  In support of their position, the nonmovants point to portions of the deposition testimony of Brimm and Sego[2]:

> Q:   Now, do you recall striking the pipeline that day?
>
> A:   No, sir.
>
> Q:   Did you hit any other type of rocks or hard objects?
>
> A:   No, sir.
>
> Q:   Did Mr. Sego hit the pipeline?
>
> A:   No, sir.

---

[2]With respect to some of the deposition testimony quoted in Defendants' memorandum on this issue, including that of East, the pages cited for such testimony are not included in the record.  Therefore, that testimony will not be considered.

> Q: You didn't hear any loud noises or anything?
>
> A: No, sir.

(D.E. 52-2 at PageID 463 (Dep. of Billy Ray Brimm).)

> Q: Now, the area on the [P]roperty where y'all were working, was the pipeline marked in that area?
>
> A: Yeah.
>
> Q: It was marked all the way through that area?
>
> A: It was on the edge of the bank.
>
> Q: Just on the edge of the bank?
>
> A: Yeah.
>
> Q: How far were you from the edge of the bank?
>
> A: On the far side of the farm. I was.
>
> Q: I don't know exactly how far that is. Could you give me a distance, an approximation?
>
> A: I don't know how to really describe that. I was a pretty good ways away from the pipeline.
>
> Q: Could you throw a baseball and hit it?
>
> A: No. I can't throw that far.
>
> \*   \*   \*
>
> Q: Now, do you recall hearing any loud noises that day?
>
> A: No.
>
> Q: Nothing sounded like somebody might have struck a pipeline or a rock or something?
>
> A: No.

>   Q: And you don't recall anyone saying anything about striking a pipeline or coming into contact with anything?
>
>   A: Not to me.
>
>   \* \* \*
>
>   Q: And you said you never saw any type of exposed pipeline or anything in the area.
>
>   A: No, sir.
>
>   Q: Have you ever struck a pipeline before in your line of work?
>
>   A: Nope. No. I wouldn't be here if I did.

(D.E. 52-1 at PageID 442-43, 445 (Dep. of Robert Sego, Jr.).) Nonmovants also submit that pilots patrolling the area have on some occasions filed aerial patrol reports regarding activity, including the presence of equipment on or near pipeline rights-of-way, that, upon further investigation, were determined to have not been an issue. (*See* D.E. 52-7 at PageID 510-13.) Finally, they suggest that the Texas Gas employees investigating the alleged strike themselves caused the damage to the pipeline.

It is undisputed that Defendants had equipment on the Property on April 6, 2020. There are also photographs in the record, submitted as exhibits to Plaintiff's reply brief, showing marks on the pipeline. On the other hand, Brimm and Sego testified that they were aware of the pipeline, which Defendants assert had been laid decades earlier, and did not strike it. No one, including the aerial patrol pilot, observed any employee of the Defendants strike the pipeline. It is also undisputed that Texas Gas itself used an excavator on the Property on April 7, 2020. While Plaintiff insists that the damage depicted in the photographs reflects "fresh gouges consistent with gashes that equipment like an excavator would make" (D.E. 53 at PageID 517), it

8

has pointed to no record evidence that the gouges were either "fresh" or consistent with Defendants' excavator.

The movant's argument boils down to this: Defendants were there so they must have gouged the pipeline.[3] But its *ipse dixit* does not make it so. The Plaintiff bears the burden of establishing negligence at trial. Texas Gas may ultimately prevail but, at the summary judgment stage, the Court cannot conclude that "the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Swift*, 583 F. Supp. 3d at 1132, *supra*. The motion for summary judgment on the common law negligence claim is, therefore, DENIED. *See Shumate v. City of Adrian, Mich.*, 44 F.4th 427, 438 (6th Cir. 2022) ("If the evidence would allow a reasonable jury to find in favor of a non-moving party, summary judgment may not be granted.").

## *Negligence Per Se*

"Liability under the negligence per se doctrine can arise when a party fails to perform a duty imposed by statute or ordinance." *Hamrick,* 599 F. Supp. 3d at 726 (quoting *Shaw v. Metro. Gov't of Nashville & Davidson Cty.*, 596 S.W.3d 726, 734 (Tenn. Ct. App. 2019)). The doctrine requires a plaintiff to demonstrate that (1) "the defendant[s] violated a statute or ordinance that 'imposes a duty or prohibition for the benefit of a person or the public'" and (2) "that 'the injured party is within the class of persons intended to benefit from or be protected by the statute.'" *Id.* (quoting *Shaw*, 596 S.W.3d at 734) (brackets omitted).

Plaintiff argues that Defendants violated the Tennessee Underground Utility Damage Prevention Act, which prohibits excavation of the private easement of an operator without giving prior notice to the state's one-call service. *See* Tenn. Code Ann. §§ 65-31-104(a), 65-31-106(a).

---

[3]Indeed, in its reply, Plaintiff likens the situation at hand to a toddler, his cup resting at his feet, insisting to his mother that he did not drop it while her back was turned.

Defendants do not deny they failed to provide the statutory notice. Texas Gas' claim must nonetheless fail, however, because, as does a claim for ordinary negligence, one based on negligence per se requires a showing of actual and proximate cause. *Hamrick*, 599 F. Supp. 3d at 726 (citing *Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003)). For the same reasons articulated in the preceding section, Plaintiff has failed to establish that no genuine issue of fact exists as to causation. The motion for summary judgment on the negligence per se claim is DENIED.

Trespass Claim.

The movant submits that Defendants unlawfully entered its easement when they used mechanized equipment to perform excavation work over the pipeline. Intentional entry onto the land of another without authorization constitutes a trespass under Tennessee law. *Barrios v. Simpkins*, No. M2021-01347-COA-R3-CV, 2022 WL 16846642, at **11-12 (Tenn. Ct. App. Nov. 10, 2022). When a trespass occurs, the "aggrieved party [has] the right to nominal damages and all consequential damages." *Twenty Holdings, LLC v. Land S. TN, LLC*, No. M2018-01903-COA-R3-CV, 2019 WL 4200970, at *7 (Tenn. Ct. App. Sept. 5, 2019).

Texas Gas points out that, under Tennessee law, although Defendants have a leasehold interest in the Property, the interest of an easement owner such as itself is paramount in the easement area to that of the servient landholder, who "cannot take actions that unreasonably interfere with the rights under the easement," citing *Nashboro Golf Course, LLC v. Townhomes of Nashboro Village, L.P.*, No. M2017-00226-COA-R3-CV, 2018 WL 4382073, at *3 (Tenn. Ct. App. Sept. 14, 2018) (internal quotation marks omitted). In determining whether a servient landholder unreasonably interfered with respect to an easement holder, the *Nashboro* court articulated the following test: "the owner of the easement must prove . . . (1) the existence of the

easement, (2) unreasonable interference with a legitimate use or purpose of the easement; and (3) actual damage to the easement holder's use" arising from the interference. *Id.* (quoting *Curtis v. Parchman*, No. M2013-01489-COA-R3CV, 2014 WL 819424, at *7 (Tenn. Ct. App. Feb. 27, 2014)); *see also Shell v. Williams*, No. M2013-00711-COA-R3-CV, 2014 WL 118376, at *9 (Tenn. Ct. App. Jan. 14, 2014).

The Court assumes upon review of its rather sparse briefing on this claim that Texas Gas bases its request for summary disposition on unreasonable interference with its easement. If that is correct, movant has failed to set forth the test cited in *Nashboro* or apply its elements to the facts of this case. Based on what is before it, therefore, the Court is unpersuaded that summary judgment should be granted on the trespass claim.

## *CONCLUSION*

In light of the foregoing, the motion for summary judgment is DENIED. This matter will proceed to trial.

IT IS SO ORDERED this 21st day of March 2023.

s/ J. DANIEL BREEN<br>
UNITED STATES DISTRICT JUDGE